IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT S. JOHNSON,                          06-CV-1206-HU

               Plaintiff,                  OPINION AND ORDER

v.

MICHAEL HANADA, PAM BROECKEL,
and CITY OF BEAVERTON,

               Defendants.


**ANTHONY W. FURNISS**
Furniss Shearer & Leineweber
1500 S.W. 1st Ave
Suite #700
Portland, OR 97201
(503) 243-2608

        Attorneys for Plaintiff

**BRUCE L. MOWERY**
280 Liberty Street, SE.
Suite 206
Salem, OR 97301
(503) 480-7251

        Attorney for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

Magistrate Judge Dennis James Hubel issued Findings and Recommendation (#67) on February 21, 2008, in which he recommended this Court grant in part and deny in part Defendants' Motion for Summary Judgment (#21) and deny Plaintiff's Motion for Summary Judgment (#36).  Plaintiff and Defendants filed timely Objections to the Findings and Recommendation.  The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report.  28 U.S.C. § 636(b)(1).  *See also United States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir. 1988); *McDonnell Douglas Corp. v. Commodore Business Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981), *cert. denied*, 455 U.S. 920 (1982).

**I.   Factual Background**

The Court adopts and summarizes the facts as found by the Magistrate Judge:

On September 22, 2004, at 9:59 p.m., a woman reported her husband had been shot.  The location of the shooting was 11370 S.W. Ridgecrest Drive.  Defendants Michael Hanada, a City of Beaverton police recruit, and Pam Broeckel, a Beaverton police officer assigned as Officer Hanada's field training officer, went

in their marked patrol vehicle to Cresmoor and Hall Boulevard, a
location approximately ten blocks from the scene of the crime,
and remained there with the engine running.  The officers were in
uniform.

     Plaintiff Robert S. Johnson was taking a walk after
celebrating his 57th birthday by having dinner and drinks with
his wife earlier in the evening.  At approximately 10:00 p.m.
after walking for nearly an hour, he approached Hall Boulevard
eastbound toward the area where the crime occurred.  Plaintiff
crossed Hall from west to east, turned northbound, and walked
along the sidewalk on the east side in the direction of the
patrol car at Cresmoor and away from the crime scene.

     From this point in the chronology, the parties' versions of
the events preceding and during the police contact that ensued
differ in several material respects.

     A.   **Plaintiff's version of the ensuing events**

          Plaintiff testified he did not notice the patrol car as
he crossed Cresmoor because its lights were off.  Although
Officer Hanada yelled "Hey" or "Hey, sir" three times in quick
succession, Plaintiff did not think the voice was directed at
him, so Plaintiff kept walking.  Officer Hanada first called out
when Plaintiff was about 200 feet past the corner of Cresmoor and
called out to Plaintiff again after he had walked another 70-100
feet.  It is undisputed that Plaintiff did not respond to Officer

3 - OPINION AND ORDER

Hanada's calls, that he walked away from Officer Hanada, and that Officer Hanada followed Plaintiff.

After Plaintiff heard the voice yell "Hey!" for the third time, he looked over his shoulder and saw someone with a flashlight approaching him quickly. Plaintiff was startled to see someone coming in his direction in the dark, so he started to walk away as fast as he could. When he realized he could not move as fast as his pursuer, Plaintiff "turned around and prepared to defendant [sic] myself." The flashlight beam was shining directly into his eyes, and he put his left arm out in front of his face "in an attempt to block the light." At deposition, Plaintiff testified he raised his right elbow because "I was going to hit him" by putting his elbow in his pursuer's face. His right hand was in a fist.

Just before Officer Hanada overtook him and the light was about ten feet away, Plaintiff dodged out of the flashlight beam. Officer Hanada stopped about two feet from Plaintiff after Plaintiff "jumped out of the light" and that was when Plaintiff saw Officer Hanada's insignia and realized he was a police officer.

Plaintiff states he would have been "totally relieved" to know Officer Hanada was a police officer before that point and that he did not have any reason to be concerned about or afraid of the police.

When Officer Hanada announced he was a police officer and told Plaintiff to put his hands up and get on the ground, Plaintiff did not see the gun in Officer Hanada's hand.  When he realized Officer Hanada was a police officer, Plaintiff asked, "What the hell are you doing and what do you want?" but Officer Hanada never responded.

At the time Plaintiff got down on the sidewalk, Officer Broeckel was "not anywhere in sight."  Plaintiff did not become aware that Officer Broeckel was present until after Plaintiff got down on the sidewalk and was being handcuffed.

Plaintiff saw Officer Hanada's light coming toward him after he got down on the sidewalk, and then Officer Hanada immediately "struck, kicked or hit me in the back of my head/neck" causing everything to go black.

Plaintiff was not asked or allowed to get up from the ground on his own.  Instead Officers Hanada and Broeckel grabbed his arm[1] and pulled him to his feet, injuring his shoulder.

Eventually Plaintiff was uncuffed.  Plaintiff estimated the time between his being stopped by Officer Hanada to the time he was uncuffed was six to eight minutes.  Sergeant Shumway had arrived on the scene by the time Plaintiff was being uncuffed and

---

[1] In his Declaration at ¶ 17, Plaintiff refers to his "arm." In Plaintiff's Response to Defendants' Concise Statement of Fact at ¶, Plaintiff refers to his "arms" even though he cites to his Declaration at ¶ 17.

5 – OPINION AND ORDER

told Plaintiff that he would be arrested and taken to jail if he
did not leave immediately.

Plaintiff walked a short distance and then called an
employee who lived nearby to come and get him because his legs
were weak and he was not sure he could walk home.

B.    **Defendants' version of the ensuing events**

As Officers Hanada and Broeckel sat in their patrol
car, Officer Hanada saw Plaintiff cross Hall Boulevard passing
behind the marked patrol car and walking in a northeasterly
direction away from the crime scene.  The patrol car lights were
on.

When he saw Plaintiff walk past, Officer Hanada got out
of his car.  Officer Broeckel remained in the front passenger
seat and radioed in a description of Plaintiff.  She then shut
off the engine, got out of the car, and locked it.  By this time,
Officer Broeckel could no longer see Plaintiff and Officer
Hanada.

Officer Hanada says he called out, "Hey sir I need to
talk to you."  There was no response, so Officer Hanada called
out two more times.  Plaintiff looked over his shoulder at
Officer Hanada and then quickened his pace.  Officer Hanada
followed Plaintiff on foot, calling out "Beaverton Police" or
"Beaverton Police Department" and repeating "I need to talk to
you about something.  Sir, stop."  Officer Hanada also yelled

6 - OPINION AND ORDER

"Person in the gray shirt, stop.  Beaverton police.  I need to talk to you."  Plaintiff looked at Officer Hanada over his shoulder a second time and walked even faster.

When Officer Hanada stepped out of the car, he intended to stop Plaintiff as a potential witness or suspect in the shooting.  Officer Hanada stated he formed a "reasonable suspicion" that Plaintiff was a suspect in the shooting after Plaintiff "quicken[ed] his pace" and again "the moment when he turned around."

Before Officer Hanada left the car, Officers Hanada and Broeckel learned from dispatch that the homicide suspect was the victim's son and had left the premises.  Sergeant James Shumway testified at his deposition that Officers Hanada and Broeckel did not have any information about the suspect's age, height or weight, but he could not recall whether they had been given information about the suspect's gender before they came into contact with Plaintiff.

After Officers Hanada and Broeckel detained Plaintiff and Officer Broeckel radioed in Plaintiff's name, dispatch advised Officers Hanada and Broeckel that the shooting suspect was 19 years old and 5'11" tall.  Plaintiff is about 6'2" tall and at that time of the encounter weighed approximately 250 pounds.  As noted, Plaintiff was then 57 years old.

Officer Hanada has provided inconsistent versions of

7 - OPINION AND ORDER

what he saw Plaintiff do at the time Plaintiff turned around.

Officer Hanada denies his flashlight was on and stated he was able to discern Plaintiff's actions from street-light illumination. In his Declaration, Officer Hanada states he saw Plaintiff's arm go up from his hip at belt level and Plaintiff pointed his index finger at Officer Hanada with his thumb raised and the three other fingers clenched into a fist. Officer Hanada feared Plaintiff had a gun and interpreted Plaintiff's arm movements as a threat. As a result, he drew his own weapon. Officer Hanada testified at his deposition, however, that Plaintiff threw his hands up in two fists, one about eye level and one at about chin level, "like he could punch you." Officer Hanada also testified he did not see a weapon in Plaintiff's hands. In his Second Declaration, Officer Hanada states Plaintiff made a "sudden turn to confront me with threatening arm and hand movements coupled with what appeared to be the muzzle of a gun pointed at me."

Officer Hanada drew his gun, announced he was a police officer, and told Plaintiff to put his hands up and get on the ground. Officer Hanada then ordered Plaintiff several times to raise his hands and get on the ground. Plaintiff initially failed to do so. Officer Broeckel states in her Declaration that she observed Officer Hanada in the process of drawing his weapon and heard him announce, "Beaverton Police. Put your hands up."

8 - OPINION AND ORDER

Officer Broeckel states she too ordered Plaintiff to put his
hands up, which he did and placed himself in a prone position on
the sidewalk.  Officers Hanada and Broeckel both state Plaintiff
was "verbal, but was not physically resisting."  Officer Broeckel
also states she did not see Officer Hanada strike or kick
Plaintiff in the back of the neck.

        The two officers had begun to handcuff Plaintiff when
Plaintiff told them that he had previously injured his left arm
or shoulder.  Because of the warning about the injury, the
officers used two sets of handcuffs.  They did a quick pat-down
for a weapon, and Officer Broeckel removed a cell phone and a
pocket knife from Plaintiff's pockets.

        The officers then told Plaintiff to roll over on his
side and get up, giving Plaintiff a "steadying hand."

        The officers ran a check on Plaintiff's identification
and did not find any outstanding warrants.  The officers were
given information that indicated Plaintiff was not a match for
the suspect.  Defendants do not dispute Plaintiff had no prior
criminal record and no reason to fear an encounter with the
police.

        Plaintiff was uncuffed, the items removed from his
person were given back to him, and he was told he could leave.
In her Declaration, Officer Broeckel stated only ten minutes
elapsed from the time Plaintiff was stopped on the sidewalk to

the time he was uncuffed and told he was free to leave.

       **C.    Events following the detention**

              The day after these events, Plaintiff and his wife went
to the Beaverton Police Department and complained to Sergeant
Shumway.  According to Plaintiff, Sergeant Shumway told them that
the City of Beaverton owed Plaintiff a sincere apology for what
happened the night before, explained Officer Hanada was in
training and "really green," and promised to look into the
officers' conduct.  At the time, Officer Broeckel was qualified
to supervise a recruit and Officer Hanada was a certified reserve
officer with training on investigatory stops, probable cause,
arrest, and reasonable force.  Officer Hanada, however, was a
recruit in phase one of his training, had not yet attended the
Police Academy, and was not a certified police officer.

              Plaintiff states he has since had two surgeries as a
result of the exacerbation of preexisting shoulder injuries to
his neck and shoulder by Officers Hanada and Broeckel.

**II. Procedural Background**

       On August 24, 2006, Plaintiff filed a Complaint in this
Court against Officer Hanada, Officer Broeckel, and the City of
Beaverton in which he alleges eight claims.  Plaintiff brings
four claims pursuant to 42 U.S.C. § 1983:[2]  (1) Officer Hanada

_____

       [2] Plaintiff's only direct allegations of § 1983 liability
against the City appear in his Third Claim pursuant to *Monell v.*
*New York City Department of Social Services*, 436 U.S. 658 (1978).

and the City violated his rights under the Fourth Amendment to
the United States Constitution to be free from excessive force,
(2) Officer Hanada and the City violated his rights under the
Fourth Amendment to the United States Constitution to be free
from unreasonable seizure, (3) the City of Beaverton failed to
properly train its officers, and (4) Officer Broeckel is liable
for Officer Hanada's actions because she was Officer Hanada's
supervisor.  Plaintiff brings his remaining claims pursuant to
Oregon state law:  (5) battery against Officer Hanada and the
City, (6) negligence against Officer Broeckel, (7) negligence
against Officer Hanada and the City, and (8) false arrest.

## III. Officer Hanada's Individual Liability under § 1983

Defendants contend Officer Hanada is entitled to summary
judgment as to Plaintiff's First and Second Claims for
unreasonable seizure and excessive force pursuant to § 1983
because Plaintiff failed to allege those claims were against
Officer Hanada in his individual or personal capacity.  According
to Defendants, when a complaint is silent about the capacity of
the defendant being sued under § 1983, the court must interpret
the plaintiff's claims as against the defendant in his official

---

Because the City cannot be liable on the basis of *respondeat
superior* for any constitutional violation by Officer Hanada based
on Claims One and Two, the Court concludes these two claims are
only against Officer Hanada.  *Monell,* 436 U.S. at 691-94 (1978).
*See also Rise v. State of Oregon*, 59 F.3d 1556, 1563 (9th Cir.
1995).

11 - OPINION AND ORDER

capacity.

Plaintiff, however, argues the Ninth Circuit interprets complaints that are silent as to the capacity in which officials are being sued under § 1983 to be actions against the defendants in their individual capacities.  Plaintiff further contends paragraph three of his Complaint (which provides "[a]t all times material hereto, Defendants Michael Hanada and Pam Broeckel were and are individuals employed by the City of Beaverton in the capacity of Beaverton Police Officers, and at all times herein were operating under color of law") put Officer Hanada on notice that Plaintiff was bringing his § 1983 claims against Officer Hanada in his individual capacity.

In the Findings and Recommendation, the Magistrate Judge adopted Plaintiff's analysis and recommended denying Defendants' Motion for Summary Judgment on this basis.

**A.    Plaintiff's First Claim**

As noted, Plaintiff contends the statement in paragraph three of his Complaint is sufficient to provide notice that Plaintiff brought his First Claim against Officer Hanada in his individual capacity.  Paragraph three, however, only identifies the parties to the action, and the language Plaintiff relies on is not explicit as to whether Plaintiff is bringing his First Claim against Officer Hanada in his individual capacity and/or official capacity.  The Court, therefore, finds Plaintiff's First

12 - OPINION AND ORDER

Claim is ambiguous as to the capacity in which Plaintiff sued Officer Hanada.

The Magistrate Judge agreed with Plaintiff that the Ninth Circuit requires a court to interpret a complaint that is silent as to the capacity in which a defendant is being sued for his conduct as brought against the defendant in his individual capacity. The Magistrate Judge cited to *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999), and *Shoshone-Bannock Tribes v. Fish & Game Commission*, 42 F.3d 1278, 1284 (9th Cir. 1994).

In their Objections to the Findings and Recommendation, Defendants note *Romano* and *Shoshone-Bannock Tribes* involve § 1983 actions brought against state actors and/or agencies. The same is true in *Price v. Akaka*, 928 F.2d 824 (9th Cir. 1991). In *Price* the plaintiffs brought a § 1983 action against a number of state officials, but the plaintiffs did not specify whether they were bringing the action against the state officials in their individual capacities. 928 F.2d at 828. The Ninth Circuit noted "the basis of the claims asserted and the nature of relief sought imply" the plaintiffs intended to bring the action against the state officials in their individual capacities. *Id*. (quotation omitted). In all three cases, however, the Eleventh Amendment prohibited the plaintiffs from bringing their claims against the state actors in their official capacities. Under those circumstances, the Ninth Circuit presumed the plaintiffs intended

13 - OPINION AND ORDER

to bring the action against the state officials in their
individual capacities because "[a]ny other construction would be
illogical where the complaint is silent as to capacity, since a
claim for damages against state officials in their official
capacities is plainly barred." *Shoshone-Bannock Tribes*, 42 F.3d
at 1285.  Nonetheless, the Ninth Circuit also noted in both
*Shoshone-Bannock Tribes* and *Price* that the plaintiffs sought
damages, and "[d]amage actions brought under 42 U.S.C. § 1983
are generally viewed as suits against the individual."  *Id*.
(quotation omitted).

        Defendants emphasize Plaintiff's action is against city
employees who are not entitled to Eleventh Amendment immunity
from actions for damages.  *See  Hyland v. Wonder*, 117 F.3d 405,
413-14 (9th Cir. 1997).  Thus, even though Plaintiff seeks
damages like the plaintiffs in *Shoshone-Bannock Tribes* and *Price*,
Defendants argue that fact is not determinative here because the
individual Defendants are not entitled to immunity from actions
for damages under the Eleventh Amendment and, according to
Defendants' reasoning, the Ninth Circuit's presumption in *Romano*,
*Shoshone-Bannock Tribes,* and *Price* should not apply to this case.


        Thus, the Ninth Circuit cases relied on by Plaintiff
are not necessarily on point because Defendants are city
employees who do not enjoy Eleventh Amendment immunity,

14 - OPINION AND ORDER

and the Ninth Circuit did not indicate whether the presumption should apply to claims ambiguously pled against such defendants. Moreover, the cases relied on by Defendants also involve actions against state officials rather than city or municipal employees and, in any event, are not from the Ninth Circuit.

After reviewing the record in its entirety, the Court concludes here, as in *Price*, "the basis of the claims asserted and the nature of relief sought [by Plaintiff] imply" Plaintiff intended to bring his First Claim against Officer Hanada in his individual capacity. This conclusion is underscored by the fact that Defendants asserted a defense of qualified immunity, which applies only to municipal employees acting in their individual capacities. *See, e.g., Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1060-61 (9th Cir. 2006). Moreover, it is clear Defendants had every incentive and actually developed a record for dispositive motions consistent with potential exposure for a claim brought against Defendant Hanada in his individual capacity. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1348-1349 (9th Cir. 1982). The Court also notes Plaintiff brought a separate claim pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), against the City of Beaverton, seeking to establish the City's alleged independent liability for acts of Officer Hanada. Because *Monell* claims most typically are filed in conjunction with and as a means to hold a city liable

15 - OPINION AND ORDER

for the same damages assessed against an employee in his
individual capacity, it follows that Plaintiff is attempting to
establish that foundational, *individual* liability against
Defendant.  In these circumstances, it would be illogical to
construe the First Claim as brought against Defendant Hanada only
in his official capacity.

    In summary and under all of these circumstances,
including the absence of any prejudice to Defendants, the Court
concludes justice requires the Court to construe Plaintiff's
First Claim for excessive force as a claim against Officer Hanada
in his individual capacity.  Finally, to the extent an amendment
of Plaintiff's Complaint under Federal Rule of Civil Procedure 15
may be necessary to formalize this construction of Plaintiff's
First Claim, the Court would exercise its discretion to permit
such an amendment.  *See Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048, 1051-52 (9th Cir. 2003)(Absent prejudice or a
"strong showing" of "undue delay, bad faith or dilatory motive on
the part of the movant, repeated failure to cure deficiencies by
amendments previously allowed, [or] . . . futility of the
amendment there exists a presumption under Rule 15(a) in favor of
granting leave to amend.").

    Accordingly, the Court adopts the recommendation of the
Magistrate Judge and denies Defendants' Motion for Summary
Judgment as to Plaintiff's First Claim against Officer Hanada.

16 - OPINION AND ORDER

**B.   Plaintiff's Second Claim**

In his Second Claim for unreasonable seizure in violation of his rights under the Fourth Amendment, Plaintiff inexplicably alleges "Defendant Hanada, acting under color of law and *in his official capacity* . . . intentionally and unlawfully seized and arrested Plaintiff without a warrant and without probable cause." Compl. ¶ 11 (emphasis added). Obviously, these specific allegations are at odds with the logical expectation that Plaintiff would also bring his Second Claim against Defendant Hanada in his individual capacity. Nevertheless, for the reasons previously enumerated, including the absence of prejudice to Defendants, the Court concludes justice requires Plaintiff's Second Claim for unreasonable seizure to be construed as a claim against Officer Hanada in his individual capacity.

Accordingly, but for the reasons stated, the Court adopts the recommendation of the Magistrate Judge and denies Defendants' Motion for Summary Judgment as to Plaintiff's Second Claim against Officer Hanada.

**IV.  Plaintiff's First Claim:  Excessive force in violation of Plaintiff's rights under the Fourth Amendment**

In his First Claim, Plaintiff alleges Officer Hanada used unreasonable and excessive force in his encounter with Plaintiff in violation of Plaintiff's rights under the Fourth Amendment of the United States Constitution. The Magistrate Judge recommended denying both parties' Motions for Summary Judgment as to this

17 - OPINION AND ORDER

claim because there are genuine issues of material fact that
preclude summary judgment.  This Court agrees.

In their Objections, Defendants concede a genuine issue
of material fact exists with respect to Plaintiff's allegation
that Officer Hanada kicked or struck Plaintiff in the neck.
Nevertheless, Defendants assert they are entitled to partial
summary judgment on that part of Plaintiff's excessive-force
claim based on the allegation that Officer Hanada displayed his
weapon and handcuffed Plaintiff.

> All claims of excessive force . . . are analyzed
> under the objective reasonableness standard of the
> Fourth Amendment as enunciated in *Graham* and
> *Garner*.  "Determining whether the force used to
> effect a particular seizure is reasonable under
> the Fourth Amendment requires a careful balancing
> of the nature and quality of the intrusion on the
> individual's Fourth Amendment interests against
> the countervailing governmental interests at
> stake."  *Graham*, 490 U.S. at 396, 109 S.Ct. 1865
> (internal quotation marks omitted).  This
> balancing test entails consideration of the
> totality of the facts and circumstances in the
> particular case, including "the severity of the
> crime at issue, whether the suspect poses an
> immediate threat to the safety of the officers or
> others, and whether he is actively resisting
> arrest or attempting to evade arrest by flight."
> *Id*.

*Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir.
2005).

As noted, the Court must consider the totality of the
circumstances surrounding the detention when deciding the issue
of excessive force.  The Court, therefore, declines to parse the

18 - OPINION AND ORDER

issue of excessive force as requested by Defendants.

Accordingly, the Court adopts the Magistrate Judge's
recommendation and denies both parties' Motions for Summary
Judgment as to Plaintiff's claim of excessive force.

**V.   Plaintiff's Second Claim:  Unreasonable seizure in violation
of Plaintiff's rights under the Fourth Amendment**

In his Second Claim, Plaintiff contends Defendant Hanada
intentionally and unlawfully seized Plaintiff without probable
cause or a warrant in violation of Plaintiff's rights under the
Fourth Amendment.

The Fourth Amendment provides:

> The right of the people to be secure in their
> persons, houses, papers, and effects against
> unreasonable searches and seizures shall not be
> violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation,
> and particularly describing the place to be
> searched, and the person or things to be seized.

U.S. Const. amend. IV, § 1.

The Magistrate Judge concluded (1) Officer Hanada's
interaction with Plaintiff did not constitute a *Terry* stop,
(2) Officer Hanada arrested Plaintiff, and (3) a genuine issue of
material fact exists as to whether Officer Hanada had probable
cause to arrest Plaintiff.  Defendants object to each of these
conclusions.

**A.   Defendants had reasonable suspicion to detain Plaintiff**

In *Morgan v. Woessner*, the Ninth Circuit explained:

> Stops under the Fourth Amendment fall into three

19 - OPINION AND ORDER

> categories.  First, police may stop a citizen for
> questioning at any time, so long as that citizen
> recognizes that he or she is free to leave.  Such
> brief, "consensual" exchanges need not be
> supported by any suspicion that the citizen is
> engaged in wrongdoing, and such stops are not
> considered seizures.  Second, the police may
> "seize" citizens for brief, investigatory stops.
> This class of stops is not consensual, and such
> stops must be supported by "reasonable suspicion."
> Finally, police stops may be full-scale arrests.
> These stops, of course, are seizures, and must be
> supported by probable cause.

997 F.2d 1244, 1252 (9th Cir. 1993)(citations omitted).

In his Findings and Recommendation, the Magistrate

Judge concluded there was not any brief, investigatory stop often

referred to as a *Terry* stop because:

> [Plaintiff] did not stop until Hanada drew his
> weapon and ordered [Plaintiff] to the ground -- at
> which point [Plaintiff] had been seized, in the
> constitutional sense.  There is no indication on
> this factual record that Hanada stopped Johnson
> and interrogated him briefly.  In the absence of a
> stop, the issue of whether Hanada had a reasonable
> suspicion to justify such a stop is irrelevant.

## 1. Officer Hanada's initial remarks to Plaintiff did not implicate the Fourth Amendment

With respect to police stops for questioning, the

Ninth Circuit has explained:

> In the ordinary course a police officer is free
> to ask a person for identification without
> implicating the Fourth Amendment. "[I]nterroga-
> tion relating to one's identity or a request
> for identification by the police does not, by
> itself, constitute a Fourth Amendment seizure."
> *INS v. Delgado*, 466 U.S. 210, 216, 104 S. Ct.
> 1758, 80 L. Ed. 2d 247 (1984).  Beginning with
> *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20
> L. Ed. 2d 889 (1968), the Court has recognized

20 - OPINION AND ORDER

> that a law enforcement officer's reasonable
> suspicion that a person may be involved in
> criminal activity permits the officer to stop
> the person for a brief time and take additional
> steps to investigate further.
>
> * * *
>
> Our decisions make clear that questions
> concerning a suspect's identity are a routine
> and accepted part of many *Terry* stops.

*Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 185-86

(2004)(citations omitted).

Here at the outset of the encounter, it appears

Officer Hanada sought to ask Plaintiff whether he had any

information concerning the shooting that had occurred ten minutes

earlier.  The evidence does not suggest Officer Hanada suspected

at the time that Plaintiff had any involvement in the shooting.

Accordingly, the Court concludes that portion of

the interaction in which Officer Hanada called out to Plaintiff

saying "Hey" or "Hey Sir" or "I need to talk to you about

something.  Sir Stop." does not implicate the Fourth Amendment.

*See Cal. v. Hodari D.*, 499 U.S. 621, 625-26, n.3 (1991)(Court

concluded a "show of authority" such as "yelling 'Stop, in the

name of the law!' at a fleeing form that continues to flee . . .

is no seizure" and rejected the dissent's contention that *Terry*

"broadened the range of encounters encompassed within the term

seizure" to include such an interaction).

## 2.    The encounter became a *Terry* stop

"The Fourth Amendment . . . protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *Willis*, 431 F.3d at 714 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  Nevertheless, "[s]uch investigatory stops are justified by reasonable suspicion that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Dorais*, 241 F.3d 1124, 1130 (9th Cir. 2001) (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)).  It requires only "a minimal level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). A court must consider the totality of the circumstances when determining whether reasonable suspicion existed.  *United States v. Osborn*, 203 F.3d 1176, 1181 (9th Cir. 2000).

Defendants contend the encounter became an investigatory stop pursuant to *Terry* "sometime after plaintiff stopped and turned quickly."  The Court agrees.  Plaintiff was stopped within the meaning of *Terry* when Officer Hanada drew his gun, announced he was a police officer, and directed Plaintiff to put his hands up to get on the ground and Plaintiff complied with

Officer Hanada's directions.  *See, e.g., Hodari D*, 499 U.S. at
625-26 (Court noted "no seizure occurs if a suspect does not
yield in response to a show of authority; [rather] seizure . . .
occurs when either the suspect is physically subdued or submits
to the assertion of authority.").

> **3.    Officer Hanada performed a lawful *Terry* stop that
> was justified by reasonable suspicion**

"The Fourth Amendment permits limited
investigatory stops where there is some reasonable, articulable,
and objective manifestation that the person seized is, or is
about to be, engaged in criminal activities." *United States v.
Smith*, 217 F.3d 746, 749 (9th Cir. 2000).  To determine whether
reasonable suspicion existed to justify a brief investigatory
stop as described in *Terry*, "the court must consider the facts
available to the officer at the moment of seizure." *Id.* (citing
*Terry*, 392 U.S. at 21-22).

Defendants assert Officer Hanada had reasonable
suspicion to detain Plaintiff when Plaintiff turned and made
gestures that Officer Hanada interpreted to be threatening.
According to Defendants, Officer Hanada had an objectively
reasonable basis to believe Plaintiff at that point was
committing or attempting to commit a number of crimes under
Oregon law such as menacing a police officer, assaulting a
public-safety officer, and assault.  In their Objections to the
Findings and Recommendation, Defendants also assert Officer

23 - OPINION AND ORDER

Hanada had reasonable suspicion at that point to stop Plaintiff
in relation to the shooting.

      a.   ***Terry* stop in relation to the shooting**

        The record reflects at the time Officer
Hanada detained Plaintiff, drew his weapon, and ordered Plaintiff
to put his hands up and get on the ground, Officer Hanada had
little information as to the description of the shooting suspect
and no information as to the suspect's location.  Nonetheless,
the shooting occurred only ten minutes before Officer Hanada
encountered Plaintiff, and Plaintiff was only ten blocks away
from the location of the shooting.  As noted, it is undisputed
that Plaintiff did not stop in response to shouts from Officer
Hanada, who was in uniform and had emerged from a marked patrol
vehicle.

        The fact that Plaintiff quickened his pace
away from the summoning officer and ultimately turned to confront
him in a stance suggesting a willingness to fight would, under
the totality of these circumstances, lead an objectively
reasonable police officer to believe "criminal activity was
afoot" and would justify a *Terry* stop of any such person for the
purpose of dispelling such reasonable suspicion.  *See United
States v. Washington*, 387 F.3d 1060, 1067 (9th Cir. 2004) ("Since
the Supreme Court decided *Terry*, it has expanded the scope of a
permissible *Terry*-stop from simply conducting a weapons pat-down

24 - OPINION AND ORDER

to 'ask[ing] the detainee a moderate number of questions to
determine his identity and to try to obtain information
confirming or dispelling the officer's suspicions.'")(quoting
*Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984)).

In *Smith* the defendant "did not immediately
submit to Officer Estes's show of authority.  Instead, he
attempted to take evasive action and turn around."  217 F.3d at
750.  The Ninth Circuit found "[e]vasive actions contribute to
the totality of circumstances suggesting reasonable suspicion."
*Id*. (citing *Illinois v. Wardlow*, 528 U.S. 119, 120 (2000)).  In
addition, the defendant in *Smith* "failed to turn around, . . .
then took a threatening posture . . . .  This was an aberrant
response to a facially legal command by a police officer and
[also] contributes to a reasonable suspicion criminal activity
may be afoot."  217 F.3d at 750.

As noted, Plaintiff here did not initially
submit to Officer Hanada's requests to stop.  In addition,
Plaintiff testified he turned towards Officer Hanada and was
prepared to defend himself when he did stop.  Plaintiff further
testified he raised his right elbow because he "was going to hit
[his pursuer]," and his right hand was in a fist.  In *Smith*, the
Ninth Circuit concluded the defendant's evasive action and
"threatening posture," together with the fact that the defendant
"had been observed looking at a stripped vehicle matching the

25 - OPINION AND ORDER

description of a stolen car and had then left the scene in an 'expeditious' manner," were sufficient reasonable suspicion to justify the investigatory stop.  217 F.3d at 750.

On this record, the Court concludes these facts justified Officer Hanada's *Terry* stop of Plaintiff for the purpose of dispelling his reasonable suspicion that criminal activity was afoot.

> **b.   *Terry* stop for possible violations of Oregon law**

Even absent reasonable suspicion related to the shooting incident, Officer Hanada had reasonable suspicion to detain Plaintiff for various crimes under Oregon law (such as menacing or attempted assault) at the time Officer Hanada ordered Plaintiff to put his hands up and to get on the ground and Plaintiff complied.

Under Oregon law, an individual commits the crime of menacing if "by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury."  Or. Rev. Stat. § 163.190.  An individual commits the crime of assault in the fourth degree under Oregon law if he "[i]ntentionally, knowingly or recklessly causes physical injury to another."  Or. Rev. Stat. § 163.160.  An individual commits the crime of attempted menacing or attempted assault in the fourth degree if he "intentionally engages in conduct which constitutes a substantial step toward" menacing or

26 - OPINION AND ORDER

assault.  Or. Rev. Stat. § 161.405.

Plaintiff's actions as described by Plaintiff himself were sufficient to give rise to "specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion" that Plaintiff was menacing or attempting to menace or to assault Officer Hanada.  *See United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000).  The Court, therefore, concludes Officer Hanada had reasonable suspicion that criminal activity was afoot *(i.e.,* that Plaintiff was at least attempting the crimes of menacing and/or assault in the fourth degree), and his reasonable suspicion justified a *Terry* stop.

Accordingly, the Court declines to adopt the Magistrate Judge's finding that the stop in this case was not a *Terry* stop and concludes Defendants had reasonable suspicion to stop Plaintiff for brief investigatory purposes pursuant to *Terry* with respect to Plaintiff's possible menacing or attempted menacing or assault.

**B.    A genuine issue of material fact exists as to whether the *Terry* stop was converted to an arrest**

Even if justified by reasonable suspicion, Plaintiff contends Defendants' actions transformed the *Terry* stop into an arrest without probable cause.  In particular, Plaintiff contends Officer Hanada was unreasonable when he drew and pointed his weapon at Plaintiff, made Plaintiff lie down on the sidewalk,

27 – OPINION AND ORDER

handcuffed Plaintiff, and allegedly either struck or kicked

Plaintiff in the neck.  As noted, Defendants deny Officer Hanada

struck or kicked Plaintiff in the neck.

The Ninth Circuit has observed "[t]here is no bright-

line rule to determine when an investigatory stop becomes an

arrest." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir.

1996).

>Rather, in determining whether stops have turned
>into arrests, courts consider the "totality of the
>circumstances."  As might be expected, the
>ultimate decision in such cases is fact-specific.
>
>In looking at the totality of the circumstances,
>we consider both the intrusiveness of the stop,
>i.e., the aggressiveness of the police methods and
>how much the plaintiff's liberty was restricted
>and the justification for the use of such tactics,
>i.e., whether the officer had sufficient basis to
>fear for his safety to warrant the intrusiveness
>of the action taken.  In short, we decide whether
>the police action constitutes a *Terry* stop or an
>arrest by evaluating not only how intrusive the
>stop was, but also whether the methods used were
>reasonable *given the specific circumstances*.  As a
>result, we have held that while certain police
>actions constitute an arrest in certain
>circumstances, e.g., where the "suspects" are
>cooperative, those *same* actions may *not* constitute
>an arrest where the suspect is uncooperative or
>the police have specific reasons to believe that a
>serious threat to the safety of the officers
>exists.  "The relevant inquiry is always one of
>reasonableness under the circumstances."

*Id*. (citations omitted; emphasis in original).  *See also*

*Halvorsen v. Baird*, 146 F.3d 680, 684 (9th Cir. 1998).

To determine whether a detention constituted an arrest

or merely an investigatory stop, the court may consider whether a

28 - OPINION AND ORDER

reasonable innocent person would have felt free to leave after
brief questioning.  *Allen*, 73 F.3d at 235.  Certain circumstances
may justify restraint or lengthy detention of a person for whom
there is not any probable cause to arrest.  *Halvorsen*, 146 F.3d
at 683-84.  Such action may be appropriate when the police
diligently pursue an investigation that is likely to confirm or
to dispel their suspicions of the individual quickly.  *Halvorsen*,
146 F.3d at 684.  Police officers also may use intrusive means to
effect a stop when the suspect is uncooperative, the stop closely
follows a violent crime, or the officers have information that
the suspect is armed.  *Washington*, 98 F.3d at 1189.
Consequently, a stop is not automatically converted into an
arrest when officers point their weapons at a suspect, use
handcuffs, and place the suspect in a police car for questioning.
*Allen*, 66 F.3d at 1056.  The relevant inquiry is one of
reasonableness under the circumstances.  *Id.* at 1057.

     Even though a stop is not automatically converted into
an arrest by the use of weapons or handcuffs, at some point the
degree of force, proximity, and duration of these events can
convert a stop into an arrest considering the totality of the
circumstances.  *Compare Gallegos v. City of Los Angeles*, 308 F.3d
987, 992 (9th Cir. 2002)(*Terry* stop not converted into an arrest
despite the fact that the officers ordered the plaintiff from the
car at gunpoint; handcuffed, frisked, and placed the plaintiff in

29 - OPINION AND ORDER

a patrol car for 45 minutes while officers investigated; and, at the same time, the plaintiff was fully compliant and the officers were not convinced a particularized danger existed) to *Washington v. Lambert*, 98 F.3d 1181, 1187 (9th Cir. 1996)(*Terry* stop converted to arrest when police ordered the plaintiffs from their car at gunpoint; frisked, handcuffed, and placed the plaintiffs in patrol cars while officers investigated allegations; and, at the same time, plaintiffs were compliant and the officers had merely a generalized concern that plaintiffs might be armed). *See also United States v. Del Vizo*, 918 F.3d 821, 825 (9th Cir. 1990)(there was a "lack of investigatory justification for" handcuffing and making the plaintiff lie on the ground even though he was suspected of drug trafficking because the plaintiff complied with officers and there was not any other evidence to suggest that the plaintiff was "particularly dangerous.").

Moreover, "[p]olice officers . . . 'need not avail themselves of the least intrusive means of responding to an exigent situation.'"  *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir. 1995)(quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).  "The Fourth Amendment does not mandate one and only one way for police to confirm the identity of a suspect.  It requires only that the government and its agents act *reasonably*." *Gallegos*, 308 F.3d at 992 (emphasis in original).

In addition, "[p]olice officers are entitled to employ

reasonable methods to protect themselves and others in potentially dangerous situations." *Allen*, 66 F.3d at 1056. Police officers can and should take reasonable steps to limit the danger associated with police actions. These steps may include pointing their weapons, use of handcuffs, and moving suspects to patrol cars. *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1076-77 (9th Cir. 2003). *See also Gallegos* 308 F.3d at 991.

Here Defendants note Plaintiff was stopped for only 6-10 minutes and the police officer had a right to protect himself in this potentially dangerous situation. In fact, neither handcuffing nor the use of guns is *de facto* unreasonable during a *Terry* stop. *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982). *See also United States v. Alvarez*, 899 F.2d 833, 838-39 (9th Cir. 1990)(*Terry* stop not converted into an arrest when officers approached vehicle with guns drawn and ordered defendant to step out of the car). Plaintiff, however, alleges Officer Hanada did more than merely point his weapon at or handcuff Plaintiff: He contends Officer Hanada "struck, kicked or hit [him] in the back of [his] head/neck." Although all rough handling is not unreasonable, *Jackson v. City of Bremerton*, 268 F.3d 646, 651-53 (9th Cir. 2001), at some point the proximity and duration of pointing a gun, the continued use of handcuffs, and rough treatment can become unreasonable. *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002)(pointing

31 - OPINION AND ORDER

a gun at suspect's head constituted unreasonable force when no exigent circumstances existed and defendant was obviously not armed).

On this record, the Court concludes there are disputed issues of material fact regarding the degree of force used by Officer Hanada.  The Court, therefore, cannot determine whether the conduct of Officer Hanada in this case converted the *Terry* stop into an arrest, which would require a showing of probable cause based on the totality of these circumstances.

## C.    A genuine issue of material fact exists as to whether there was probable cause to arrest Plaintiff

As noted, the Court is unable to determine on this record whether the stop constituted an arrest or a mere detention incident to a stop under the Fourth Amendment.  If there was an arrest, Plaintiff has the burden to prove the absence of probable cause.  For the reasons already stated, the Court adopts the Magistrate Judge's finding that genuine issues of material fact exist that preclude summary judgment for either party with respect to the issue of probable cause to arrest.

## VI.  The Court denies Defendants' Motion for Summary Judgment as to Officer Hanada's right to qualified immunity

In their Objections, Defendants assert Officer Hanada is entitled to qualified immunity to the extent that he is being sued in his individual capacity under § 1983 for unreasonable seizure and excessive force with respect to the display of his

weapon and handcuffing of Plaintiff.

A.    The Law

"Generally officers performing discretionary duties have qualified immunity, which shields them 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  *Haynie*, 339 F.3d at 1077(quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004)(citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

When analyzing a defense of qualified immunity, a court must first determine whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Brosseau*, 125 S. Ct. at 598 (citing *Saucier*, 533 U.S. at 201).  If the court concludes the conduct violated a constitutional right, the court then must determine whether, under the law existing at the time of the conduct, a reasonable officer could have believed his conduct was lawful. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993). *See also Brosseau*, 125 S. Ct. at 599.

With respect to step one of the analysis, "'[t]he

contours of the [constitutional] right must be sufficiently clear
that a reasonable official would understand that what he is doing
violates that right." *Brosseau*, 125 S. Ct. at 599 (quoting
*Saucier*, 533 U.S. at 201). "Because the focus is on whether the
officer had fair notice that [his] conduct was unlawful, . . .
[i]f the law at [the time of the conduct] did not clearly
establish that the officer's conduct would violate the
Constitution, the officer should not be subject to liability."
*Brosseau*, 125 S. Ct. at 599.

    **B.  Analysis**

      With respect to step one of the qualified immunity
analysis, "'[t]he contours of the [constitutional] right must be
sufficiently clear that a reasonable official would understand
that what he is doing violates that right." *Brosseau*, 125 S. Ct.
at 599 (quoting *Saucier*, 533 U.S. at 201). "Because the focus is
on whether the officer had fair notice that [his] conduct was
unlawful, . . . [i]f the law at [the time of the conduct] did not
clearly establish that the officer's conduct would violate the
Constitution, the officer should not be subject to liability."
*Id*.

      The Court already has concluded as a matter of law that
Officer Hanada had reasonable suspicion to stop Plaintiff.  There
is, therefore, no further need to evaluate qualified immunity as
to the investigatory *Terry* stop.

34 - OPINION AND ORDER

As to whether Officer Hanada's conduct converted this *Terry* stop into an arrest, taking the facts in the light most favorable to the Plaintiff as directed by *Brosseau*, the amount of force used by Officer Hanada as alleged by Plaintiff would be beyond the scope of that necessary to effectuate a *Terry* stop. For example, the Ninth Circuit in *United States v. Del Vizo* held a *Terry* stop was converted into an arrest when officers ordered a suspected drug trafficker out of his vehicle, had him lie on the ground, and handcuffed him. 918 F.3d 821, 825 (9th Cir. 1990). The court concluded the stop was converted into an arrest based on the fact that the defendant complied fully with all orders and there was "no other evidence suggesting that Del Vizo was particularly dangerous." *Id*.

Similarly, the Ninth Circuit in *Washington* held a *Terry* stop was converted into an arrest when police ordered the plaintiffs from their car at gunpoint and frisked, handcuffed, and placed the plaintiffs in patrol cars while officers investigated. 98 F.3d at 1192. The court again based its conclusion that the stop was converted into an arrest on the fact that plaintiffs were compliant and the officers had a merely generalized concern that the plaintiffs might be armed. *Id*. at 1190-91.

Considering these cases as a whole as well as Plaintiff's allegations concerning the degree of force used by

35 - OPINION AND ORDER

Officer Hanada (*i.e.*, that he struck or kicked Plaintiff in the neck), this record does not support a finding that a reasonable officer could have believed such alleged conduct was lawful. Officer Hanada, therefore, is not entitled to qualified immunity on this basis.

Accordingly, the Court adopts the Magistrate Judge's recommendation that the Court deny Defendants' Motion for Summary Judgment on the basis of qualified immunity.

## VII. Plaintiff's Third Claim:  Failure to train in violation of § 1983

In his Third Claim, Plaintiff alleges the City of Beaverton has a policy, custom, or practice of allowing uncertified recruit officers to go on patrol duty before they are properly trained in the law regarding stops, seizures, arrest, reasonable suspicion, and probable cause.

The Magistrate Judge recommended the Court grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment as to Plaintiff's Third Claim because Plaintiff has not established the existence of a formal municipal policy or longstanding custom or practice that is causally linked to the alleged deprivation of Plaintiff's constitutional rights.  The Magistrate Judge also found Plaintiff had not established "Broeckel, Shumway, or [Chief Training Officer Chris] Lamberger are officials with final policy making authority."

In any event, the record does not support Plaintiff's

36 – OPINION AND ORDER

factual assertion that the City of Beaverton has a policy, custom, or practice of allowing uncertified recruit officers to go on patrol duty before they are properly trained in the law regarding stops, seizures, arrest, reasonable suspicion, and probable cause.  In fact, Defendants produced evidence that Officer Hanada received training in stops, reasonable suspicion, arrests, and probable cause.  Plaintiff, therefore, has not established a material issue of fact exists as to the City of Beaverton's municipal liability.

Accordingly, the Court adopts the Magistrate Judge's recommendation, grants Defendants' Motion for Summary Judgment on Plaintiff's Third Claim for failure to train, and denies Plaintiff's Motion for Summary Judgment on this claim.

## VIII. Plaintiff's Fifth Claim:  Battery

In his Fifth Claim, Plaintiff alleges Officer Hanada battered him in violation of Oregon state law.

The Magistrate Judge recommended the Court deny Defendants' Motion for Summary Judgment as to Plaintiff's battery claim because genuine issues of material fact exist as to whether the force Officer Hanada used against Plaintiff was necessary to carry out his duties.

In their Objections, Defendants concede a genuine issue of material fact exists as to whether Officer Hanada kicked or struck Plaintiff in the neck, but Defendants assert they are

37 - OPINION AND ORDER

entitled to summary judgment as to the amount of force used in handcuffing Plaintiff.

The Court declines to parse the issue of battery as requested by Defendants.  Plaintiff's battery claim involves all of the elements of the physical interaction between Plaintiff and Officer Hanada.  The Court, therefore, must consider the totality of the circumstances.

Accordingly, the Court adopts the Magistrate Judge's recommendation and denies Defendants' Motion for Summary Judgment as to Plaintiff's Fifth Claim for battery.

## IX.  Plaintiff's Eighth Claim:  Wrongful detention/false arrest in violation of Oregon law

In his Eighth Claim, Plaintiff alleges Officer Hanada falsely arrested and/or wrongfully detained him in violation of Oregon law.

The Magistrate Judge recommended the Court deny both parties' Motions for Summary Judgment as to Plaintiff's state-law claim for false arrest.  Defendants object to the Magistrate Judge's recommendation on the ground that probable cause is a complete defense to a claim of false arrest, and Officer Hanada had probable cause to arrest Plaintiff.

To prevail on a claim of wrongful detention/false arrest under Oregon law, a plaintiff must show:  (1) defendant confined the plaintiff; (2) defendant intended the act that causes confinement; (3) plaintiff was aware of the confinement; and

38 - OPINION AND ORDER

(4) the confinement was unlawful. *Hiber v. Cred. Collection Serv.*, 154 Or. App. 408, 413 (1998)(citation omitted).

The Oregon Supreme Court has made clear that Article I, § 9, of the Oregon Constitution, which prohibits unreasonable search and seizure, is to be interpreted independently of the Fourth Amendment to the United States Constitution. *State v. Caraher*, 293 Or 741, 757 (1982). *See also State v. Kennedy*, 295 Or. 260, 267 (1983) ("Lest there be any doubt about it, when this court cites federal opinions in interpreting a provision of Oregon law, it does so because it finds the views there expressed persuasive, not because it considers itself bound to do so by its understanding of federal doctrines."). Accordingly, this Court must make a determination separate and distinct from the Fourth Amendment of the United States Constitution as to whether the detention in this case was lawful based on the interpretation by the Oregon courts of the protections under Article I, § 9, of the Oregon Constitution.

Or. Rev. Stat. § 133.005(1) provides an "arrest" is "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense. A 'stop' as authorized under ORS 131.605 to 131.625[3] is not an arrest." "[E]ven when a stop is authorized, a

---

[3] The Court notes Or. Rev. Stat. §§ 131.605-131.625 describe stops based on reasonable suspicion rather than arrests.

restraint that goes beyond the scope of a stop will result in an illegal arrest, if it is not based on probable cause." *State v. Morgan*, 106 Or. App. 138, 141, 806 P.2d 713 (1991)(citation omitted).

This Court has concluded Officer Hanada had reasonable suspicion to stop Plaintiff for brief investigatory purposes, which is allowed under Oregon Revised Statute § 131.606. Nevertheless, a genuine issue of material fact exists with respect to whether Officer Hanada kicked or struck Plaintiff in the neck that precludes summary judgment for either party with respect to whether Officer Hanada's actions exceeded the scope of the stop.  Finally, the fact issues that precluded summary judgment regarding probable cause as to Plaintiff's § 1983 claims require the same result here.

Accordingly, the Court adopts the Magistrate Judge's Recommendation and denies the parties' Motions for Summary Judgment as to Plaintiff's Eighth Claim for wrongful detention/false arrest under Oregon law.

**X.  Those portions of the Findings and Recommendation to which the parties do not object**

As to those portions of the Findings and Recommendation to which the parties do not object, including the Magistrate Judge's Recommendations regarding Plaintiff's failure to allege facts sufficient to establish Officer Broeckel's supervisory liability under § 1983 and to dismiss Plaintiff's claims against Officers

40 - OPINION AND ORDER

Hanada and Broeckel and the City for negligence, this Court is relieved of its obligation to review the record *de novo*. *Britt v. Simi Valley Unified School Dist.*, 708 F.2d 452, 454 (9th Cir. 1983). *See also Lorin Corp. v. Goto & Co.*, 700 F.2d 1202, 1206 (8th Cir. 1983). Having reviewed the legal principles *de novo*, the Court does not find any error in those portions of the Findings and Recommendation to which the parties do not object.

**XI.  Summary of Rulings**:

1.    Plaintiff's First and Second Claims will proceed against Officer Hanada in his individual capacity rather than his official capacity.  The Court, therefore, denies Defendants' Motion for Summary Judgment as to these claims.

2.    Genuine issues of material fact exist as to Plaintiff's claim of excessive force.  The Court, therefore, denies both parties' Motions for Summary Judgment as to Plaintiff's claim of excessive force.

3.    Genuine issues of material fact exist as to Plaintiff's claim of unreasonable seizure.  The Court, therefore, denies both parties' Motions for Summary Judgment as to Plaintiff's claim of unreasonable seizure.

4.    Officer Hanada is not entitled to qualified immunity.

5.    Plaintiff has not established a genuine issue of material fact exists as to the City of Beaverton's

41 - OPINION AND ORDER

municipal liability.  The Court, therefore, grants
Defendants' Motion for Summary Judgment and denies
Plaintiff's Motion for Summary Judgment on Plaintiff's
Third Claim for failure to train.

6.    Genuine issues of material fact exist as to the issue
of battery.  The Court, therefore, denies Defendants'
Motion for Summary Judgment as to Plaintiff's Fifth
Claim for battery.

7.    Genuine issues of material fact exist as to Plaintiff's
claim of wrongful detention/false arrest under Oregon
law.  The Court, therefore, denies the parties' Motions
for Summary Judgment as to Plaintiff's Eighth Claim for
wrongful detention/false arrest.

8.    The Court does not find any error in those portions of
the Findings and Recommendation to which the parties do
not object including the Magistrate Judge's Findings
and Recommendation regarding Plaintiff's failure to
allege facts sufficient to establish Officer Broeckel's
supervisory liability under § 1983 and to dismiss
Plaintiff's claims.


## CONCLUSION

For these reasons, the Court **ADOPTS as modified** Magistrate

Judge Hubel's Findings and Recommendation (#67).  Accordingly, as

42 - OPINION AND ORDER

herein specified, the Court **GRANTS in part** and **DENIES in part**
Defendants' Motion for Summary Judgment (#21) and **GRANTS in part**
and **DENIES in part** Plaintiff's Motion for Summary Judgment (#36).

      IT IS SO ORDERED.

      DATED this 2nd day of June, 2008.


                  /s/ Anna J. Brown

               _____
               ANNA J. BROWN
               United States District Judge