IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT S. JOHNSON,                          06-CV-1206-BR

                    Plaintiff,             OPINION AND ORDER

v.

MICHAEL HANADA, PAM BROECKEL,
and CITY OF BEAVERTON,

                    Defendants.


ANTHONY W. FURNISS
Furniss Shearer & Leineweber
1500 S.W. 1st Ave
Suite #700
Portland, OR 97201
(503) 243-2608

          Attorneys for Plaintiff

BRUCE L. MOWERY
280 Liberty Street, S.E.
Suite 206
Salem, OR 97301
(503) 480-7251

          Attorney for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Michael

Hanada's Rule 12(B) Motion to Dismiss (#97).

For the reasons that follow, the Court **GRANTS in part** and

**DENIES in part** Defendant's Motion.


## BACKGROUND

The Court has set out the underlying facts of this matter in

several previous Opinions and Orders.  The Court, therefore, will

not reiterate them here.

On August 24, 2006, Plaintiff filed a Complaint against

Defendants in which he alleged eight claims.  Plaintiff brought

four claims pursuant to 42 U.S.C. § 1983:  (1) Officer Hanada and

the City of Beaverton violated Plaintiff's rights under the

Fourth Amendment to the United States Constitution to be free

from excessive force, (2) Officer Hanada and the City violated

Plaintiff's rights under the Fourth Amendment to the United

States Constitution to be free from unreasonable seizure, (3) the

City of Beaverton failed to properly train its officers, and

(4) Officer Broeckel is liable for Officer Hanada's actions

because she was Officer Hanada's supervisor.  Plaintiff brought

his remaining claims pursuant to Oregon state law:  (5) battery

against Officer Hanada and the City, (6) negligence against Officer Broeckel, (7) negligence against Officer Hanada and the City, and (8) false arrest against Officer Hanada and the City.

On September 12, 2006, Defendants filed an Answer in which they asserted eight affirmative defenses including "[e]ach individual defendant is entitled to immunity pursuant to the doctrine of qualified immunity."

In September and October 2007, the parties filed Cross-Motions for Summary Judgment.  On February 21, 2008, Magistrate Judge Dennis James Hubel issued Findings and Recommendation in which he recommended this Court grant in part and deny in part Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

On June 5, 2008, this Court issued an Opinion and Order in which it adopted as modified the Magistrate Judge's Findings and Recommendation and, accordingly, granted in part and denied in part Defendants' Motion for Summary Judgment and denied Plaintiff's Motion for Summary Judgment.  The Court specifically concluded, among other things, that Plaintiff's First and Second Claims were against Officer Hanada in his individual capacity rather than his official capacity.

On July 30, 2008, Plaintiff filed an Amended Complaint in which he asserted claims for (1) excessive force in violation of

his rights under the Fourth Amendment against Officer Hanada individually, (2) unreasonable seizure/false arrest in violation of his rights under the Fourth Amendment against Officer Hanada individually, (3) battery against Officer Hanada and the City of Beaverton, and (4) false arrest under state law against Officer Hanada and the City of Beaverton.

On August 29, 2008, the parties filed a Joint Proposed Pretrial Order in which Defendants raised a number of issues, including Defendants' assertion that Plaintiff failed to serve Officer Hanada with a Summons and Amended Complaint that gave him notice he was being sued in his individual capacity prior to the expiration of the applicable statute of limitations.  According to Defendants, therefore, Plaintiff's § 1983 claims against Officer Hanada are time-barred.

On September 15, 2008, the Court held a hearing to discuss the issues raised in the Pretrial Order.  Although the Court resolved the majority of the issues on the record, the Court directed Defendants to file a motion to address the issues of timely service on Officer Hanada and Plaintiff's ability to bring state-law claims against Officer Hanada under the Oregon Tort Claims Act (OTCA).

On September 19, 2008, Defendants filed a Motion to Dismiss pursuant to Rule 12(b) in which they seek dismissal of (1) Plaintiff's § 1983 claims against Officer Hanada and

4 - OPINION AND ORDER

(2) Plaintiff's state-law tort claims against Officer Hanada.

## DISCUSSION

I.    **Service on Officer Hanada.**

    A.    **The Court will apply the course-of-proceedings analysis to determine whether Officer Hanada had sufficient and timely notice that he was being sued in his individual capacity.**

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal based on insufficient service of process. As noted, Defendants assert Plaintiff did not personally serve Officer Hanada with a Complaint informing him that he was being sued in his individual capacity before the expiration of the statute of limitations. Thus, Defendants contend Officer Hanada's rights under the Due Process Clause of the United States Constitution would be violated if the Court allowed Plaintiff to proceed with claims against Officer Hanada in his individual capacity.

This is the second time the Court has struggled with Plaintiff's failure to allege explicitly whether he seeks to hold Officer Hanada liable in his individual capacity. The Court first addressed this issue in its June 5, 2008, Opinion and Order. In that Opinion and Order, the Court concluded justice required the Court to construe both of Plaintiff's § 1983 claims as brought against Officer Hanada in his individual capacity. At that time, however, Defendants had not asserted a due-process

barrier to proceeding under the Complaint or to allowing
Plaintiff to amend his Complaint to assert claims against Officer
Hanada in his individual capacity due to insufficient service of
process. The Court, therefore, did not consider or address those
issues in its June 5, 2008, Opinion and Order.

      The Ninth Circuit has held "new service is necessary in
order to satisfy the due-process requirements of notice when
there is to be a change in the status of defendants." *Eaglesmith
v. Ward*, 73 F.3d 857, 860 (9th Cir. 1995). In *Eaglesmith*, the
district court interpreted the complaint and the parties'
stipulation as establishing that the plaintiff intended to bring
his § 1983 action against Ward in his official capacity as school
superintendent. *Id*. The district court then concluded Ward was
entitled to immunity under the Eleventh Amendment. *Id*. Because
the statute of limitations period had elapsed, the district court
subsequently denied the plaintiff's request to file an amended
complaint to "clarify" that he intended to bring a claim against
Ward in his individual capacity. *Id*. The Ninth Circuit affirmed
the district court as follows:

> Under Rule 15(c), an amendment seeking
> to change a party relates back to the date
> of the original complaint if (1) the amendment
> arose out of the same conduct or transaction
> as the original complaint and (2) the party
> being added had notice and is not prejudiced
> by the amendment. *See Percy v. San Francisco
> General Hosp.*, 841 F.2d 975, 978 (9th Cir. 1988).
> Eaglesmith argues that he should have been
> granted leave to amend his complaint because

> he is only seeking to clarify the capacity in
> which Ward is being sued, and the conduct and
> transaction involved in the suit remain the
> same.  He asserts that because he has consist-
> ently argued that Ward is personally liable
> for the alleged wrongful conduct, Ward has had
> sufficient notice of his personal liability.
>
> However, we have held that new service within the
> statute of limitations is necessary in order to
> satisfy the due process requirement of notice when
> there is to be a change in the status of
> defendants.  *Jackson v. Hayakawa*, 682 F.2d 1344,
> 1348 (9th Cir. 1982).  Because Eaglesmith did not
> serve Ward with new notice of the change in status
> within the statute of limitations, we hold that
> the district court properly denied Eaglesmith's
> request for leave to amend the complaint.

*Id.  See also Jackson v. Hayakawa*, 682 F.2d 1344, 1348 (9th Cir.

1982)("New service would be necessary in order to satisfy the due

process requirement of notice if there was to be a change in the

status of defendants.").

The Court notes the parties do not dispute Plaintiff

would have to serve Officer Hanada anew if the Court concludes

Officer Hanada did not have sufficient and timely notice of

Plaintiff's intention to bring this action against him in his

individual capacity.  The parties also agree it is too late at

this point for Plaintiff to make new service on Officer Hanada

within the statute-of-limitations period.

The parties, however, dispute whether the initial

service of Plaintiff's Complaint and Summons provided Officer

Hanada with sufficient and timely notice of Plaintiff's intent to

bring this action against him in his individual capacity.

Plaintiff relies on two cases from the Sixth Circuit to support his position that Officer Hanada had sufficient notice and that new service, therefore, is not required: *Moore v. Harriman*, 272 F.3d 769 (6th Cir. 2001), and *Rodgers v. Banks*, 344 F.3d 587 (6th Cir. 2003).

In *Moore*, the plaintiff brought a § 1983 action against the City of Harriman and a number of police officers. The caption of the complaint did not specify whether the officers were named in their official or individual capacities. *Moore*, 272 F.3d at 771. The defendant officers moved to dismiss the complaint for failure to state a claim against them in their individual capacities. The plaintiff asserted his complaint reflected that he had sued each officer in his individual capacity, but the district court, nevertheless, granted the officers' motion to dismiss without prejudice. *Id*. When the plaintiff moved for leave to amend the complaint to add the word "individually" after each officer's name in the caption, the district court denied the plaintiff's motion on the ground that amendment would be futile because the one-year statute of limitations underlying his § 1983 claims against the officers had expired. On appeal, the Sixth Circuit noted it had previously held that "plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they were suing state officials as individuals, rather than as officials" on the

8 - OPINION AND ORDER

grounds "that defendants [must] receive notice of the possibility of individual liability" and the "Eleventh Amendment creates a jurisdictional bar to suits against states and state officials sued in their individual capacities for money damages." *Id*. at 772 (citing *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989)). Nonetheless, the court found *Wells* did not establish a *per se* rule requiring § 1983 plaintiffs to affirmatively plead individual capacity in their complaints. *Id*. (citation omitted). In fact, after *Wells* the Sixth Circuit applied the "course-of-proceedings" test to determine whether "§ 1983 defendants have received notice of the plaintiff's intent to hold them personally liable, albeit without clearly labeling the test as such." *Id*. The court noted the "vast majority" of other circuits also apply the course-of-proceedings test to determine whether an action has been brought against an official in his individual or official capacity. *Id*. at 773 (citing *Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996); *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529-30 (2d Cir. 1993); *Hill v. Shelander*, 924 F.2d 1370, 1373-74 (7th Cir. 1991); *Houston v. Reich*, 932 F.2d 883, 885 (10th Cir. 1991); *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990); *Lundgren v. McDaniel*, 814 F.2d 600, 604 (11th Cir. 1987); *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973)). The Sixth Circuit pointed out that the course-of-proceedings test includes

consideration of such factors as "requests for compensatory or punitive damages and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity," which is a defense that is available only to officers who are sued in their individual capacities. *Id.* at 772 n.1. Applying the course-of-proceedings test, the court concluded the fact that the complaint referred to the officers as individual defendants, that the plaintiff alleged the officers acted "for themselves and for the City," and that the plaintiff sought compensatory and punitive damages against each defendant was sufficient to put the defendants on notice that the plaintiff intended to bring the action against them in their individual capacities. *Id.* at 773-74.

Similarly, the plaintiff in *Rodgers* filed an action against the defendant pursuant to Title VII and § 1983. The defendant moved for summary judgment on the plaintiff's § 1983 claim on the ground that the Eleventh Amendment bars § 1983 actions seeking money damages against state employees sued in their official capacities. *Rodgers*, 344 F.3d at 593-94. Although the plaintiff asserted in her response to the defendant's motion for summary judgment that she intended to bring the action against the defendant in her individual capacity, the plaintiff did not explicitly make that clear in her complaint. *Id.* The court, therefore, applied the course-of-

proceedings test to determine whether the defendant was on notice
that the plaintiff intended to bring the action against her in
her individual capacity.  The court noted the plaintiff requested
compensatory and punitive damages, which "provides some notice of
[the plaintiff's] intent to hold Defendant personally liable."
*Id*. at 594 (citation omitted).  Nevertheless, the court pointed
out that the complaint listed the defendant's name and official
title and specifically indicated the defendant was being sued in
her "official capacity as the representative of the State of Ohio
department of Mental Health."  *Id*.  Finally, the court noted the
defendant had not moved for qualified immunity, which the court
found to be "yet another indication that Defendant was not
adequately notified that she was being sued in her individual
capacity."  *Id*.  The court concluded "insufficient indicia exists
in the original complaint and amended complaint suggesting that
Defendant was on notice that she was being sued in her individual
capacity."  *Id*. at 595.

Defendants, in turn, rely on *Hayakawa* and *Eaglesmith* to
support their position that Officer Hanada did not have
sufficient and timely notice to satisfy due process.  Unlike the
matter before this Court, however, those cases did not involve a
defense of qualified immunity and, thus, they are not helpful in
these circumstances.

The Court notes the Ninth Circuit has not expressly

11 - OPINION AND ORDER

adopted the course-of-proceedings test.  Nevertheless, the Ninth
Circuit has addressed the issue of determining whether a
defendant is being sued in his official or individual capacity in
in *Shoshone-Bannock Tribes v. Fish & Game Commission*, 42 F.3d
1278 (9th Cir. 1994), and *Price v. Akaka*, 928 F.2d 824 (9th Cir.
1991).  Because the Eleventh Amendment prohibited the plaintiffs
in those cases from bringing their claims against the state
actors in their official capacities, the Ninth Circuit presumed
the plaintiffs intended to bring the action against the state
officials in their individual capacities.  "Any other
construction would be illogical where the complaint is silent as
to capacity, since a claim for damages against state officials in
their official capacities is plainly barred."  *Shoshone-Bannock
Tribes*, 42 F.3d at 1285.  Nonetheless, the Ninth Circuit also
concluded in both *Shoshone-Bannock Tribes* and *Price* that the
claims against the defendants were in their individual capacities
because the plaintiffs sought damages and "[d]amage actions
brought under 42 U.S.C. § 1983 are generally viewed as suits
against the individual."  *Id*. (quotation omitted).  In *Price*, the
Ninth Circuit also found "the basis of the claims asserted and
the nature of relief sought" implied the plaintiffs intended to
bring the action against the state officials in their individual
capacities.  *Price*, 928 F.2d at 828 (quotation omitted).

Here Plaintiff's action is against City employees who

12 - OPINION AND ORDER

are not entitled to Eleventh Amendment immunity from actions for damages. *See Hyland v. Wonder*, 117 F.3d 405, 413-14 (9th Cir. 1997). Thus, the individual Defendants are not entitled to immunity from actions for damages under the Eleventh Amendment, and, therefore, the Ninth Circuit's presumptions in *Shoshone-Bannock Tribes* and *Price* do not apply here. Under the circumstances of this case, the Court adopts the reasoning of the Second, Third, Sixth, Seventh, Tenth, Eleventh, and District of Columbia Circuits and applies the course-of-proceedings test to determine whether Officer Hanada had sufficient and timely notice of Plaintiff's intent to bring this action against him in his individual capacity.

**B.    Under the course-of-proceedings test, Officer Hanada had sufficient and timely notice that he was being sued in his individual capacity.**

In the original Complaint that was timely served on Officer Hanada, Plaintiff requests compensatory and punitive damages for both of his § 1983 claims against Officer Hanada. Punitive damages, however, are not recoverable against a defendant sued in his official capacity. *See Shehee v. Baca,* No. CV 08-2277-FMC (E), 2008 WL 1968549, at *6 (C.D. Cal. May 2, 2008)(A plaintiff "may not recover punitive damages against a governmental entity or an individual governmental officer in his or her official capacity.") (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Ruvalcaba v. City of*

13 - OPINION AND ORDER

*Los Angeles*, 167 F.3d 514, 524 (9th Cir.), *cert. denied*, 528 U.S. 1003, 120 S.Ct. 495, 145 L.Ed.2d 382 (1999)).  Plaintiff also alleges Officer Hanada is an "individual[] employed by the City of Beaverton."  In addition, and most compellingly, Defendants assert in the Answer filed shortly after Officer Hanada was served that Officer Hanada is entitled to qualified immunity, which is a defense that is available only to officers who are sued in their individual capacities.  The Court notes Defendants did not plead this affirmative defense in the alternative. Finally, as the Court noted in its June 5, 2008, Opinion and Order, "it is clear Defendants had every incentive and actually developed a record for dispositive motions consistent with potential exposure for a claim brought against Defendant Hanada in his individual capacity."  June 5, 2008, Opinion and Order at 15.

Based on this record, the Court concludes the course-of-proceedings test establishes Officer Hanada had sufficient notice that Plaintiff intended to bring this action against him in his individual capacity at the time that Defendants filed their Answer and well within the statute-of-limitations period. Thus, the Court concludes new service on Officer Hanada is not necessary to satisfy the due-process requirement of notice.

Accordingly, the Court denies Defendants' Motion to Dismiss Plaintiff's claims against Officer Hanada for insuffi-

14 - OPINION AND ORDER

cient service.

## II. Plaintiff's state-law claims.

Defendants also move to dismiss Plaintiff's state tort claims against Officer Hanada because Plaintiff may only bring these claims against the City of Beaverton under the OTCA.

The OTCA provides in pertinent part:

> [E]very public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment. . . .  The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment . . . shall be an action against the public body only.  The remedy provided by ORS 30.260 to 30.300 is exclusive of any other action or suit against any such officer, employee or agent of a public body whose act or omission within the scope of the officer's, employee's or agent's employment or duties gives rise to the action or suit.  No other form of civil action or suit shall be permitted.  If an action or suit is filed against an officer, employee or agent of a public body, on appropriate motion the public body shall be substituted as the only defendant.

Or. Rev. Stat. § 30.265(1).

Plaintiff asserts "questions remain about the constitutionality of the OTCA under Article I, section 10, of the Oregon Constitution" after *Clarke v. OHSU*, 343 Or. 581 (2007).

In *Clarke*, the plaintiff was admitted to Oregon Health Sciences University (OHSU) shortly after birth for surgery to repair a congenital heart defect.  Following surgery, the plaintiff was placed in intensive care, at which point problems with his breathing tube caused prolonged oxygen deprivation

15 - OPINION AND ORDER

leading to severe brain damage.  A *guardian ad litem* brought an
action against OHSU and several doctors and nurses, alleged
negligence by the defendants, and sought noneconomic damages of
$5,000,000 and economic damages of $12,000,000.  OHSU then filed
a motion to dismiss the individual defendants and to substitute
OHSU as the sole defendant based on the OTCA.  The trial court
granted OHSU's motion, and OHSU filed an answer admitting
liability and noting the requested damages exceeded the damages
limits provided by the OTCA.  OHSU also filed a motion for
judgment on the pleadings requesting the trial court to order
judgment entered against OHSU in the maximum amount of damages
available under the OTCA: $200,000.  The trial court granted the
motion, and the plaintiff appealed.

On appeal, the plaintiff in *Clarke* asserted, among other
things, that the OTCA violated the remedy clause of the Oregon
Constitution, Article I, § 10, because the OTCA eliminated a
remedy against the medical professionals named in the action and
left the plaintiff with an inadequate substitute remedy against
the public body whose damages were capped.  The Oregon Court of
Appeals rejected the plaintiff's argument as to his claim against
OHSU on the ground that it would have been immune from liability
at common law.  *Id*. at 587.  The Oregon Court of Appeals,
however, accepted the plaintiff's argument with respect to the
substitution of OHSU as the sole defendant under Oregon Revised

16 - OPINION AND ORDER

Statute § 30.265(1).  *Id*.  The Oregon Court of Appeals concluded
the OTCA did not provide a constitutionally adequate remedy in
this case because "recovery of less than two percent of one's
economic damages--particularly given the nature of the injuries
alleged--is a remedy incapable of restoring the right that has
been injured." *Id*. at 587-88.  The Oregon Court of Appeals
concluded Oregon Revised Statute § 30.265(1) violated Article I,
§ 10, as applied to this case and, therefore, reversed the trial
court's judgment and remanded with instructions to reinstate the
claims against the individual defendants.  *Id*. at 588.

    The parties appealed and the Oregon Supreme Court affirmed
the decision of the Oregon Court of Appeals as to the Article I,
§ 10, argument regarding substitution of OHSU in this case:

> Article I, section 10, does not eliminate the
> power of the legislature to vary and modify both
> the form and the measure of recovery for an
> injury, as long as it does not leave the injured
> party with an "emasculated" version of the remedy
> that was available at common law. . . . Our
> assessment of the "injury done [plaintiff] in his
> person" is relatively simple in the context of
> this case.  Plaintiff alleges, and defendants
> admit for purposes of this proceeding, that, due
> to the personal injury suffered here as a
> consequence of defendants' negligence, plaintiff
> has suffered economic damages in the sum of
> $11,073,506, for anticipated life and health care
> expenses, and $1,200,000 for lost future earning
> capacity, for total economic damages of
> $12,273,506.  Plaintiff also alleges, and
> defendants admit, that plaintiff has suffered
> noneconomic damages in the sum of $5,000,000.
> There is no dispute that, when Oregon adopted its
> remedy guarantee, plaintiff would have been
> entitled to seek and, if successful, to recover

both types of damages from the individual
defendants.

With the 1991 amendment to the OTCA, the
legislature eliminated a plaintiff's right to seek
a full recovery for torts committed by public
officers, employees, or agents.  That amendment
left any injured person, in those circumstances,
with a capped remedy of $100,000 in economic
damages and $100,000 in noneconomic damages
against the public body only.  The statute also
eliminates entirely any claim against the
individual tortfeasors by requiring substitution
of those individual defendants by the public body
as the sole defendant.

                    * * *

We view plaintiff's economic damages of over $12
million as representative of the enormous cost of
lifetime medical care currently associated with
permanent and severe personal injuries caused by
the medical negligence of a state officer, agent,
or employee.  Defendants do not argue that those
damages do not constitute an "injury" within the
meaning of the constitution.  Nor does anything in
the legislation suggest such a conclusion by the
legislature.  Yet, the legislature has completely
eliminated an injured person's preexisting right
to obtain a full recovery for those damages from
the individual tortfeasors who negligently caused
the injuries.

As we have explained, the legislature is
authorized under Article I, section 10, to vary or
modify the nature, the form, or the amount of
recovery for a common-law remedy. However, that
authority is not unlimited . . . .  [T]here is
simply nothing that we can discern from our
state's history, or from the nature, the form, or
the amount of recovery available for the
preexisting common-law claim, that would permit
this court to conclude that the limited remedy for
permanent and severe injury caused by medical
negligence that is now available under the OTCA
meets the Article I, section 10, remedy
requirement.

* * *

> In sum, we hold . . . the elimination of a cause
> of action against public employees or agents in
> Oregon Revised Statute 30.265(1), *as applied to*
> *plaintiff's claim against the individual*
> *defendants*, violates the Remedy Clause of Article
> I, section 10, because the substituted remedy
> against the public body, as specified in Oregon
> Revised Statute 30.270(1), is an emasculated
> version of the remedy that was available at common
> law.

*Id*. at 606-10 (emphasis added).

It is unclear to what extent the holding of *Clarke* may

affect areas other than claims for medical negligence.  For

example, Plaintiff did not cite any cases in which courts applied

*Clarke* to claims for battery or false arrest.  In addition, the

record in this case does not establish Plaintiff has suffered

injuries far greater than the damages cap of $200,000.

As this Court noted in *Hemstreet v. Duncan*,

> plaintiffs' expansive reading of *Clarke* is
> untenable. . . .  *Clarke* had a very narrow holding
> wholly inapplicable to ORS 496.620.  On its final
> page, *Clarke* held that:  the elimination of a
> cause of action against public employees or agents
> in ORS 30.265(1), as applied to plaintiff's claims
> against the individual defendants, violates the
> Remedy Clause of Article I, section 10 because the
> substituted remedy against the public body, as
> specified in ORS 30.270(1), is an emasculated
> version of the remedy that was available at common
> law.  *Clarke*, 343 Or. at 610, 175 P.3d. at 434.
> In reaching this holding, the court was clear that
> it was not developing any new Remedy Clause
> jurisprudence, but instead was applying consistent
> holdings from previous cases that "the legislature
> may alter common-law remedies, but 'may not
> substitute an 'emasculated remedy' that is
> incapable of restoring the right that has been

injured.'" *Id*. at 606, 175 P.3d. at 432, quoting
*Smothers v. Gresham Transfer Inc*, 332 Or. 83,
119-20, 23 P.3d. 333, 354 (2001), quoting *West v.
Jalof*, 113 Or. 184, 195, 232 P. 642, 645 (1925).
*Clarke* leaves the legal landscape of Remedy Clause
jurisprudence unchanged, except with respect to a
certain narrow class of claims brought pursuant to
ORS 30.265(1) & .270(1).  It does not . . .
purport to hold . . . any other state statute
. . . facially invalid.

Civil No. 07-732-ST, 2008 WL 2167137, at *7 (D. Or. May 21,

2008).  *See also Atwood v. Or. Dep't of Transp.*, No.

CV-06-1726-ST, 2008 WL 803020, at *10 (D. Or. Mar. 20, 2008)

("*Clarke* was clear that its decision was confined to an 'as

applied' challenge for 'permanent and severe injury caused by

medical negligence.'  It did not hold the substitution of the

state for individually named defendants was unconstitutional

absent evidence that the substituted remedy against the state is

an emasculated version of the common law remedy.").  This

Court concludes the holding of *Clarke* was limited and specific to

the facts at issue in that case.

Accordingly, the Court concludes on this record that the

special circumstances of *Clarke* do not exist in this matter, and,

therefore, the OTCA continues to govern Plaintiff's state-law

claims against Officer Hanada.  Accordingly, the Court grants

Defendant's Motion to Dismiss Plaintiff's state-law claims

against Officer Hanada because Plaintiff may only bring those

claims against the City of Beaverton pursuant to the OTCA.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss (#97).

The Court **DIRECTS** the parties to submit an amended Pretrial Order no later than January 30, 2009 to reflect the resolution of the issues addressed herein and to clarify the limited issues remaining for trial.

IT IS SO ORDERED.

DATED this 7th day of January, 2009.`


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


21 - OPINION AND ORDER